UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LILIANA HERNANDEZ, MIRANDA ALEXANDER, NATASHA JOFFE, MARIA ISABEL HOLTROP, MARCO FEKRAT, EMIN GHARIBIAN, ROHIT SHARMA, HECTOR ARROYO, and TIMOTHY PORTER, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>AFSCME CALIFORNIA; AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES; AFSCME LOCAL 3299, AFSCME LOCAL 2620, and AFSCME LOCAL 3634, as individual defendants and as representatives of the class of all chapters and affiliates of the American Federation of State, County, and Municipal Employees; XAVIER BECERRA, in his official capacity as Attorney General of the State of California; ADRIA JENKINS-JONES, in her official capacity as Acting Director of the California Department of Human Resources; RALPH DIAZ, in his official capacity as Acting Secretary of the California Department of Corrections and Rehabilitation; BETTY YEE, in her official capacity | No. 2:18-cv-2419 WBS EFB<br><br>MEMORANDUM AND ORDER RE: UNION DEFENDANTS' MOTION TO DISMISS |

1

| | |
|---|---|
| 1<br>2<br>3<br>4 | as State Controller of California;<br>PUBLIC TRANSPORTATION SERVICES<br>CORPORATION; LOS ANGELES COUNTY<br>METROPOLITAN TRANSPORTATION<br>AUTHORITY,<br><br>          Defendants. |

----oo0oo----

Nine employees of the State of California brought this putative class action against various affiliates of the American Federation of State, County, and Municipal Employees ("AFSCME") (collectively "the union defendants"), various officials of the State of California, the Public Transportation Services Corporation, and the Los Angeles County Metropolitan Transportation Authority. Plaintiffs allege that these defendants have unconstitutionally compelled payments from plaintiffs to the union defendants and that they have not allowed public employees to resign their union membership. The union defendants move for partial dismissal of plaintiffs' complaint. (Docket No. 70.)

I.    Background

Plaintiffs are employees of the state of California who reside throughout the state, and an AFSCME affiliate represents each plaintiff as their exclusive collective bargaining representative. (Second Am. Compl. ("SAC") ¶¶ 3-16 & 27-34 (Docket No. 67).) Every plaintiff except for Emin Gharibian became a member of their respective AFSCME affiliate. (See id. ¶ 39.)

Prior to the Supreme Court's decision in Janus v.

American Federation of State, County, & Municipal Employees, 138 S. Ct. 2448 (2018), there were two types of public employees in California: (1) those who purportedly agreed to pay full union dues and (2) those who declined union membership and paid a reduced amount in agency fees that compensated a union for the costs incurred in the collective bargaining process. (Id. ¶ 36.) In 1977, the Supreme Court upheld the constitutionality of compelling the payment of agency fees for collective-bargaining purposes, stating that the practice did not violate an employee's First Amendment rights to freedom of speech and association. See Abood v. Detroit Bd. of Educ., 431 U.S. 209 (1977). In Janus, the Supreme Court overruled Abood and held that the First Amendment prohibits the collection of agency fees from nonconsenting employees in toto. 138 S. Ct. at 2486.

In the wake of the Supreme Court's decision in Janus, plaintiffs filed this representative action challenging various practices connected with defendants' collection of union dues and agency fees. The union defendants request that this court dismiss (1) the American Federation of State, County, and Municipal Employees ("AFSCME International")[1] and Local 3634 from this lawsuit; (2) all claims brought by plaintiff Timothy Porter; and (3) all claims for damages in the form of agency fees, or the equivalent portion of union dues, paid prior to the Supreme

---

[1] The union defendants argue that the SAC makes no factual allegations of wrongdoing against AFSCME International. Plaintiffs do not oppose dismissal of AFSCME International, admitting that they named this defendant "out of an abundance of caution." (Resp. to Mot. to Dismiss ("Resp.") at 26 (Docket No. 76).) Accordingly, the court will dismiss AFSCME International from this action.

Court's decision in Janus.

II. Motion to Dismiss

    A. Plaintiffs' Refund Claim

Plaintiffs' complaint alleges, inter alia, that plaintiffs and putative class members are entitled to a full refund of all agency fees, or the equivalent amount in union dues, paid to the union defendants before Janus. (SAC ¶ 44.)

For the purposes of this order, the court assumes without deciding that Janus is entitled to full retroactive effect. See Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97 (1993) ("When [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule.").

Plaintiffs bring their claim for refund under 42 U.S.C. § 1983. (SAC ¶ 44.) Because defendants do not contest that they were acting under the color of state law, the court assumes for the purposes of this order that they were. See Manhattan Cmty. Access Corp. v. Halleck, --- S. Ct. ----, 2019 WL 2493920, at *4 (2019) (discussing the "few limited circumstances" where a private entity qualifies as a state actor for purposes of an action under Section 1983, including "when the government acts jointly with the private entity").

However, the union defendants argue that that they are not liable because they relied in good faith on existing law that authorized the collection of agency fees. At the hearing on this

4

motion, plaintiffs' counsel agreed in part, conceding that the union defendants' good-faith reliance bars any legal claim for damages. This court concurs. The Ninth Circuit has held that private parties may be entitled to a good-faith defense to a claim under Section 1983 where they "did [their] best follow the law and had no reason to suspect that there would be a constitutional challenge to [their] actions." See Clement v. City of Glendale, 518 F.3d 1090, 1097 (9th Cir. 2008). In the agency fees context, not only did unions have authorization under state statute, but the practice of collecting agency fees in this manner had been upheld for decades as constitutional by the United States Supreme Court. See Abood, 431 U.S. at 222-23; see also Locke v. Karass, 555 U.S. 207, 213 (2009) (describing Abood's rule, as reaffirmed in subsequent cases, as "a general First Amendment principle"). Thus, the union is entitled to the good-faith defense as a matter of law. See Lusnak v. Bank of Am., N.A., 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) (observing that affirmative defenses may be raised on a motion to dismiss where they do not implicate disputed issues of fact).

Faced with this good-faith defense, plaintiffs seek to avoid it by characterizing their demand for a refund as an equitable claim for restitution rather than a legal claim for damages. (See SAC ¶ 141.) They argue that defenses like qualified immunity and good faith are categorically inapplicable to claims for equitable relief. See Wood v. Strickland, 420 U.S. 308, 314 n.6 (1975), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982) ("[I]mmunity from damages does not ordinarily bar equitable relief."). Even if this distinction

5

is well taken, plaintiffs' refund claim fails for two independent reasons.

First, plaintiffs cannot simply plead around defenses by labeling the proposed remedy as equitable rather than legal. Instead, this court must look to "the substance of the remedy sought rather than the label placed on that remedy." Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 661 (9th Cir. 2019) (citations and quotations omitted). It is uncontroverted that plaintiffs' claim seeks payment out of the general assets of the union defendants. And the Supreme Court has stressed that recovering money out of a defendant's general assets, as opposed to a segregated fund, "is a legal remedy, not an equitable one." Montanile v. Bd. of Tr. of Nat. Elevator Indus. Health Benefit Plan, 136 S. Ct. 651, 658 (2016) (emphasis in original); see also Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212-14 (2002) (same).[2]

Plaintiffs do not allege that the union defendants intentionally comingled agency fees with general funds to avoid claims for restitution. Further, unions dissipated any agency fees on nontraceable items. See Montanile, 136 S. Ct. at 658 (stating that expenditure on nontraceable items "destroys an equitable lien"). Plaintiffs' theory under Janus depends on the fact that the fees and dues collected were expended for

---

[2] Even though these cases are in the context of ERISA, the Supreme Court has acknowledged that ERISA's reference to equitable relief refers to "what equitable relief was typically available in premerger equity courts." See Montanile, 136 S. Ct. at 657 (citation omitted); see also id. at 658 (relying on "standard equity treatises" to identify whether the proposed remedy was equitable or legal).

6

expressive activities with which they disagreed. See Babb v. Cal. Teachers Ass'n, No. 2:18-cv-06793 JLS DFM, --- F. Supp. 3d ----, 2019 WL 2022222, at *8 (C.D. Cal. May 8, 2019) ("[I]t is not the case that the agency fees remain in a vault, to be returned like a seized automobile."). Accordingly, because plaintiffs' proposed remedy is legal in nature, the union defendants' good faith bars relief.

Second, the court would reach the same conclusion in a suit in equity. "The essence of equity jurisdiction" is that federal courts have the flexibility "to mould each decree to the necessities of the particular case." Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944). Even in constitutional adjudication, "equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 (1973) (plurality). Given these considerations, "[i]t is well established that reliance interests weigh heavily in the shaping of an appropriate equitable remedy." Id. at 203.

The reliance interests here are quite compelling. The union defendants relied on Supreme Court precedent and a state statute that explicitly authorized the challenged practice. See id. at 209 ("[S]tate officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful."). Unions throughout the country collected billions of dollars under Abood's rule.³ See Janus, 138 S. Ct. at 2486. Allowing the

---

³ While the opinion in Janus referred to this money as a "considerable windfall," it did not "appear to contemplate the 'windfall' being disgorged, nor the potential that some unions might face an existential threat from lawsuits such as the

7

recoupment of such a large sum of money would have potentially disruptive consequences that could threaten the operations of unions and significantly deplete their treasuries. See Am. Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 182-83 (1990) (plurality) (recognizing these as cognizable equitable interests).

Moreover, these plaintiffs presumably received some benefits from the fees they paid, through the representation provided by the unions. While the Supreme Court held in Janus that those benefits could not withstand First Amendment scrutiny, the majority did not deny the fact that nonunion members received such benefits. See 138 S. Ct. at 2466-69. It must also be observed here that "plaintiffs do not propose to give back the benefits that the union's efforts bestowed on them." Gilpin v. AFSCME, 875 F.2d 1310, 1316 (7th Cir. 1989). Consequently, granting plaintiffs a full refund would stand the equitable remedy on its head. See id. Based on these observations, it would be neither fair nor workable to entertain plaintiffs' claim.

Nevertheless, plaintiffs argue that a defendant is never allowed to enrich itself by keeping property it took in violation of another's constitutional rights. See, e.g., United States v. Windsor, 570 U.S. 744, 775 (2013) (ordering the United States to refund taxes it collected in reliance on the Defense of Marriage Act); United States v. Lewis, 478 F.2d 835, 836 (5th Cir. 1973) (stating that fines collected under a statute that is

---

present one." See Mooney v. Ill. Educ. Ass'n, 372 F. Supp. 3d 690, 707 (C.D. Ill. 2019).

8

subsequently determined to be unconstitutional must be repaid when suit is brought to recover them). Those cases, however, do not stand for such a sweeping proposition. Unlike in Windsor and Lewis, the union defendants are private parties who were not responsible for passing the legislation that is now unconstitutional. Instead, they relied on the type of statute the Supreme Court explicitly approved of in Abood.

Accordingly, the court will dismiss plaintiffs' claim for a refund in the amount of agency fees paid prior to Janus.

B. Plaintiff Timothy Porter's Claims

Plaintiff Timothy Porter is employed by the Public Transportation Services Corporation and is a member of AFSCME Local 3634. (SAC ¶¶ 35, 39.) Since the Supreme Court issued its ruling in Janus, Porter has pondered whether to resign his union membership and is concerned that he will be forced to continue to pay union dues after he relinquishes his membership. (Id. ¶ 120.) He is also worried that he will lose his "classification seniority" if he quits the union. (Id. ¶ 134.) On June 27, 2018, he informed his employer that he had not signed a union card or opted into fees, and asked whether dues would be taken from his paycheck. (Id. ¶ 121.) Porter's employer told him to contact his union. (Id. ¶ 122.) Porter wishes, however, to terminate payroll deductions immediately upon resigning his union membership. (Id. ¶ 123.) He seeks a declaratory judgment that California Government Code §§ 1152 and 1157.12(b) are unconstitutional, as well as an injunction against their enforcement, because they allegedly prevent him from halting payroll deductions unless and until the union instructs his

9

employer to do so.  (Id. ¶¶ 123, 125.)  The union defendants contend that these claims fail because Porter lacks Article III standing.

Under Article III of the U.S. Constitution, the judicial power is limited to "Cases" and "Controversies."  That a plaintiff must have standing to sue is "rooted in the traditional understanding of a case or controversy."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016).  To have Article III standing, a plaintiff must have "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).  An injury for the purposes of Article III must be "concrete, particularized, and actual or imminent."  Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010).  For an injury to be concrete and particularized, it must cause real harm that affects the plaintiff in a personal and individual way.  See Spokeo, 136 at 1548 (citations omitted).  A "threatened injury must be certainly impending to constitute injury in fact," and "allegations of possible future injuries are not sufficient."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (emphasis in original) (citations and quotations omitted).  The party seeking to invoke this court's jurisdiction bears the burden of establishing that jurisdiction exists.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 376 (1994); Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986).

Porter argues that he has standing to seek declaratory and injunctive relief because the challenged provisions of the California Government Code prevent him from instructing his

employer to terminate payroll deductions. This alleged harm by itself is insufficient to confer standing. Even if Porter has a right to instruct his employer to terminate payroll deductions, Porter would not satisfy Article III's injury-in-fact requirement with an injury "divorced from any concrete harm." See Spokeo, 136 S. Ct. at 1549; see also Bassett v. ABM Parking Servs., Inc., 883 F.3d 776, 783 (9th Cir. 2018) (same). Although Porter may not want to submit a request to terminate payroll deductions to his union, it is difficult to imagine how submitting this request, without more, would cause Porter harm to any of his real interests. While the Supreme Court in Spokeo stated that "intangible injuries can nevertheless be concrete," 136 S. Ct. at 1549, Porter fails to sufficiently allege why this requirement independently exacts any harm to his First Amendment rights.

To the extent Porter believes that the union defendants would not honor his request to discontinue dues payments once he resigns, that injury is too speculative to confer standing. Porter has not asked Local 3634 whether dues payments would be halted immediately if he resigns. Until he does so and receives an answer that they would not be, this court cannot conclude that any threatened harm from continued dues payments after resignation is "certainly impending," and thus imminent for the purposes of Article III standing. See Clapper, 568 U.S. at 409. For the same reason, Porter's concern that he may lose his classification seniority if he quits his union (SAC ¶ 134) also does not constitute an injury that is "certainly impending." Indeed, under California law, unions and state employers cannot discriminate against an employee who exercises his right to

11

refuse to participate in a union.  See Cal. Gov't Code § 3506.

Accordingly, Porter does not have standing to bring his claims for declaratory and injunctive relief.

IT IS THEREFORE ORDERED THAT the union defendants' Partial Motion to Dismiss (Docket No. 70) be, and the same hereby is, GRANTED IN PART as follows:

1. Plaintiffs' claims against AFSCME International are DISMISSED WITH PREJUDICE;
2. Plaintiffs' claim for the refund of agency fees, or the equivalent portion in union dues, paid prior to Janus is DISMISSED WITH PREJUDICE; and
3. Plaintiff Timothy Porter's claims for declaratory and injunctive relief are DISMISSED for LACK OF STANDING.

Dated:  June 20, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE