| | |
|---|---|
| LILIANA HERNANDEZ, MIRANDA ALEXANDER, NATASHA JOFFE, MARIA ISABEL HOLTROP, MARCO FEKRAT, EMIN GHARIBIAN, ROHIT SHARMA, HECTOR ARROYO, and TIMOTHY PORTER, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AFSCME CALIFORNIA; AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES; AFSCME LOCAL 3299, AFSCME LOCAL 2620, and AFSCME LOCAL 3634, as individual defendants and as representatives of the class of all chapters and affiliates of the American Federation of State, County, and Municipal Employees; XAVIER BECERRA, in his official capacity as Attorney General of the State of California; ADRIA JENKINS-JONES, in her official capacity as Acting Director of the California Department of Human Resources; RALPH DIAZ, in his official capacity as Acting Secretary of the California Department of Corrections and | No. 2:18-CV-02419 WBS EFB<br><br><u>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u> |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

1

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5 | Rehabilitation; BETTY YEE, in her official capacity as State Controller of California; PUBLIC TRANSPORTATION SERVICES CORPORATION; LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>              Defendants. |

----oo0oo----

Plaintiffs are employees of the State of California and brought this action against various affiliates of the American Federation of State, County, and Municipal Employees ("AFSCME") (collectively "the union defendants"), various officials of the State of California, the Public Transportation Services Corporation, and the Los Angeles County Metropolitan Transportation Authority (collectively "the state defendants"). Plaintiffs allege that AFSCME Local 3299 and Local 2620 unlawfully deducted dues from their paychecks after they resigned their union memberships. Before the court is the union defendants' Motion for Summary Judgment (Docket No. 89).

I. Factual Background

Plaintiffs Miranda Alexander, Natasha Joffe, and Maria Holtrop became members of AFSCME Local 2620 by signing a membership agreement that authorized their employer, the State of California, to deduct monthly dues and remit them to the union. (Resp. to Defs.' Mot. for Summ. J. at 3; Resp. to Defs.' SUF at 12, 14, 15 (Docket No. 94-1).) The agreement stated that the authorization was "voluntary and not a condition of [plaintiffs'] employment." (Mem. in Supp. of Summ. J, Exs. 4a, 4f, 4k, "Local

2620 Membership Agreements" (Docket No. 90).) The authorization was "irrevocable . . . for a period of one year from the date of execution," "regardless of whether [plaintiffs] [were] or remain[ed] a member of the Union." (Id.)

Plaintiff Hector Arroyo became a member of AFSCME Local 3299 by signing a similar membership contract. (Resp. to Defs.' SUF at 8, ¶ 23.) Arroyo's membership agreement committed Arroyo "voluntarily to contribute" an amount equal to membership dues for a period of one year even if Arroyo resigned his union membership or "the law no longer require[d] nonmembers to pay a fair share fee." (Mem. in Supp. of Summ. J, Ex. 2e, "Arroyo Membership Agreement" (Docket No. 90-3).) The authorization would renew each year unless Arroyo mailed the union a signed revocation letter. (Id.)

Plaintiff Liliana Hernandez also joined AFSCME Local 3299 by signing a membership agreement. (Resp. to Defs.' SUF at 3, ¶ 10.) The agreement did not provide for a commitment to pay dues for any set amount of time, nor did it place restrictions on when Hernandez could revoke her dues deduction authorization. (See Mem. in Supp. of Summ. J, Ex. 1a, "Hernandez Membership Agreement" (Docket No. 90-2).)

On June 27, 2018, the Supreme Court decided Janus v. AFSCME Council 31, 138 S. Ct. 2448 (2018), and held that no payment to a union may be collected from an employee without the employee's clear affirmative consent. Id. at 2486. After the Court announced its decision, plaintiffs contacted their respective unions to resign their union membership and halt payroll deductions of membership dues. (Resp. to Defs.' SUF at

3

4, ¶ 13; 9, ¶ 26; 12, ¶ 43; 15, ¶ 50; 16, ¶ 57.) The unions cancelled plaintiffs' memberships. (Resp. to Defs.' SUF at 5, ¶ 18; 8, ¶ 29; 13, ¶ 45; 14, ¶ 53; 15, ¶ 59.) Although plaintiffs were no longer union members, each union continued collecting membership dues from plaintiffs pursuant to their respective membership contracts. (Id.)

Plaintiffs filed suit and asserted claims under 42 U.S.C. § 1983 and California state common law. Plaintiffs concede that plaintiff Hernandez' state common law claims fall exclusively within the Public Employee Relations Board jurisdiction and must be dismissed. (Resp. to Defs.' Mot. Summ. J. at 15 (Docket No. 94).) Plaintiffs also agree that, because the union no longer deducts dues from plaintiffs' paychecks, plaintiffs' claims against the state defendants for declaratory and injunctive relief are moot and must be dismissed. (Resp. to State Defs.' Mot. for Summ. J. at 2 (Docket No. 95).)[1] Accordingly, the only issue before the court is plaintiffs' claim that the continued deduction of fees after plaintiffs resigned their union membership violates plaintiffs' First Amendment rights, actionable under § 1983.

II. Discussion

A. Under Color of State Law

A party may sue under 42 U.S.C. § 1983 to remedy deprivations of rights secured by the Constitution and laws of the United States only when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of

---

[1] The court therefore will grant the state defendants' Motion for Summary Judgment (Docket No. 91).

4

any State or Territory." See Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982). Further, "[b]ecause the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" Id. "Section 1983's under-color-of-state-law requirement and the Fourteenth Amendment's 'state action' requirement are closely related." Collins v. Womancare, 878 F.2d 1145, 1148 (9th Cir. 1989). "[C]onduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law." Lugar, 457 U.S. at 935 n.18. Here, plaintiffs must meet both requirements. Accordingly, to determine if plaintiffs may sustain this claim under Section 1983, this court evaluates whether the conduct at issue constitutes state action under the Fourteenth Amendment. See Collins, 878 F.2d at 1148.

   B.   State Action

A plaintiff satisfies the Fourteenth Amendment's state-action requirement if "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." Lugar, 457 U.S. at 937; see also Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). "This fair attribution test has two components: a state policy and a state actor." Roudybush v. Zabel, 813 F.2d 173, 177 (8th Cir. 1987). The state policy component requires that the deprivation be caused "by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." Lugar, 457 U.S. at 937. The state actor component requires that "the party

5

charged with the deprivation be a person who may fairly be said to be a state actor." Id. Plaintiff must meet both prongs for there to be state action. Collins v. Womancare, 878 F.2d 1145, 1151 (9th Cir. 1989). There is no precise formula for discerning state action: "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington, 365 U.S. 715 (1961)).

1. State Policy

"A state policy may be inferred from either a state statute or a well-settled custom or practice." Roudybush v. Zabel, 813 F.2d 173, 176 (8th Cir. 1987) (internal citations omitted). Plaintiffs argue that the state-imposed "rule of conduct" is Senate Bill No. 866, which establishes that "[d]eductions may be requested by employee organizations . . . from the salaries and wages of their members, and public employers shall honor these requests." See Cal. Gov. Code § 1152. Defendants, on the other hand, rely on Ohno v. Yasuma, 723 F.3d 984 (9th Cir. 2013), to argue that the court must look to "the source of the alleged constitutional harm" in evaluating this first prong. See id. at 994. The source of the deprivation, defendants argue, is instead the membership contracts that plaintiffs signed, which authorized the dues deductions at issue. (Defs.' Mot. Summ. J. at 10.)

This court agrees with plaintiffs and finds that a state rule of conduct, Senate Bill 866, was a cause of the alleged constitutional harm. Even assuming that the Ohno court intended to create a legal test, the language in Ohno does not

require the court to identify the most important, the most obvious, or the one single source of the deprivation. Indeed, "[t]he state policy requirement ensures that the alleged deprivation is <u>fairly attributable</u>" -- not exclusively attributable -- "to a state policy." <u>Collins</u>, 878 F.2d at 1151. The court must instead determine whether the exercise of a state-created right or a state rule of conduct is so uninvolved as to make the challenged activity "so 'purely private'" that it "falls without the scope of the Fourteenth Amendment." <u>Burton</u>, 365 U.S. at 725. The distinction is subtle but nontrivial. Defendants can always find private actions that contributed to the alleged deprivations. See, e.g., <u>Roberts v. AT&T Mobility LLC</u>, 877 F.3d 833 (9th Cir. 2017) (alleging that incorporating a federal right into a contract is a private action that does not implicate state action). But those private actions should not suffice to take the conduct outside of the scope of the Fourteenth Amendment where state action was also involved. Accordingly, this court finds that the garnishment of wages of nonmembers involved the application of a state-created rule of conduct and was therefore not so purely private.

    The court's conclusion is consistent with precedent. The Ninth Circuit has rejected plaintiffs' argument that the source of deprivation is the private membership agreement. In <u>Roberts v. AT&T Mobility LLC</u>, 877 F.3d 833 (9th Cir. 2017), plaintiffs' contracts with AT&T "included arbitration agreements." <u>Id.</u> at 836. After plaintiffs sued AT&T for false advertisement, "AT&T moved to compel arbitration in light of the Supreme Court's ruling . . . that the [Federal Arbitration Act]

7

preempts state law deeming AT&T's arbitration provision to be unconscionable," and plaintiffs opposed the motion on First Amendment grounds. Id. Like the union defendants here, AT&T argued that "AT&T's enforcement of a private agreement" did not satisfy the state-policy prong. See Br. of Def.-Appellee AT&T Mobility LLC, No. 1616915, 2017 WL 2212991, at *21 (9th Cir. May 15, 2017); see also id. at 844 n.7. The Ninth Circuit rejected the argument because "[t]he alleged constitutional deprivation arose because AT&T exercised its federally created right to compel arbitration under the FAA, and '[u]ndoubtedly the State was responsible for the statute.'" Roberts, 877 F.3d at 844 n.7.

Roberts is instructive here. Although the membership agreements are private contracts drafted by the union, the alleged constitutional deprivation arose because the union defendants used the state-created rule that compels the state to garnish wages pursuant to those agreements. See Cal. Gov. Code § 1152; see also Pinhas v. Summit Health, Ltd., 880 F.2d 1108, 1117 (9th Cir. 1989) (holding that "[t]here is little doubt that the first prong under Lugar has been satisfied" where plaintiff challenged the content of a private hospital's bylaws but state law required hospitals to draft bylaws). As in Roberts, there is no question that "the State was responsible for the statute" that ultimately caused the garnishment of wages. See Roberts, 877 F.3d at 844 n.7.

Indeed, although case law on the state policy prong is admittedly limited, the use of state-imposed procedures seemingly qualifies as state action. In Buller v. Buechler, 706 F.2d 844 (8th Cir. 1983), for example, private defendants garnished

8

plaintiffs' auction sale pursuant to South Dakota's garnishment law. The court found that there was "no question that the first requirement of the Lugar state action test [was] met [because] the state created the procedural scheme by which the defendants were able to garnish the plaintiffs' property." Id. at 848; cf. Roudybush, 813 F.2d at 177 (finding no state policy where plaintiffs "disavow any claim . . . that the process by which [plaintiffs] were deprived of their property . . . conformed to a permanent and well-settled practice of the State."). Here, union defendants could not have deprived plaintiffs of their rights through their membership agreements alone. Just as in Buller, the union defendants used the state-created procedural scheme, Section 1152, to collect the membership dues now at issue. This use of state procedures suffices to meet the first prong. See also N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964) ("The [state action] test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised.").

By contrast, cases where the state policy prong is not satisfied are entirely inapplicable because they involve either allegations that the defendant violated state law, see, e.g., Lugar, 457 U.S. at 940 (finding that defendants "were acting contrary to the relevant policy articulated by the State," so their conduct "could not be ascribed to any governmental decision"); Collins, 878 F.2d at 1153 ("[Plaintiffs'] challenge fails [the Lugar test] because their claim depends upon the violation of California's citizen's arrest statute."); Roudybush, 813 F.2d at 177 (finding that plaintiff's "allegations are

9

antithetical to a claim that the appellees' actions are attributable to a state policy" where "[t]hey claim that the appellees intentionally violated state policy"), or cases where defendants did not rely on any state policy to deprive plaintiffs, see, e.g., Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 923 (9th Cir. 2011) (finding that, if Defendants had a "policy of only providing religious materials and rabbi visits to individuals that Defendants determined were Jewish," it was "their own" and not the state's); Ohno, 723 F.3d at 994 ("[Plaintiff] challenges the constitutionality of . . . Japanese tort law, . . . [not] a right privilege, or rule of conduct imposed by a domestic governmental entity of individual."). Plaintiffs allege that the union defendants garnished plaintiffs' wages pursuant to, and not in contravention of, Section 1152. Accordingly, neither of these lines of cases applies here.

    Finally, to find that the union's garnishing of wages in reliance on the state's procedure is not state action would seem inconsistent with Janus itself. The Supreme Court in Janus discussed in detail how "compelled subsidization of private speech seriously impinges on First Amendment rights." 138 S. Ct. at 2464. The First Amendment, however, "is a guarantee only against abridgement by government." Hudgens v. NLRB, 424 U.S. 507, 513 (1976). If no state action were found here, it would follow that the same conduct that was at issue in Janus, namely the state extracting fees at the request of a union from nonconsenting persons to fund political speech, was not state action and did not violate the First Amendment. In other words,

if there was no state action in this case, the union could direct state employers to violate Janus without facing liability under Section 1983. The court decliknes to endorse such a conclusion and instead finds that plaintiffs satisfy the state-policy prong.

  2. <u>State Actor</u>

  "The state actor requirement ensures that not all private parties 'face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." <u>Collins</u>, 878 F.2d at 1151. "The Supreme Court has articulated four tests for determining whether a [non-governmental person's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." <u>Ohno</u>, 723 F.3d at 995 (quoting <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128, 1140 (9th Cir. 2012)). Plaintiffs proceed under only the joint action test.

  Under the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." <u>Franklin v. Fox</u>, 312 F.3d 423, 445 (9th Cir. 2002). "[P]rivate actors can be state actors if they are 'willful participant[s] in joint action with the state or its agents." <u>George v. Pac.-CSC Work Furlough</u>, 91 F.3d 1227, 1231 (9th Cir. 1996). A party may be a state actor "because he is a state official, because he has acted together with or has obtained significant aid from state officials, . . . because his conduct is otherwise chargeable to the State," <u>Lugar</u>, 457 U.S. at 937, or because there is "[a]n agreement between government and a private party." <u>George</u>, 91 F.

11

3d at 1231.

Under this test, the court finds that the union defendants were state actors. The state established a law that compelled the state to garnish wages in response to the unions' requests. The statute does not require any particular action from unions. In requesting the state to continue extracting dues, the union defendants therefore were "willful participant[s] in joint action with the state." See George, 91 F. 3d at 1231. The membership agreements alone were insufficient for the unions to extract membership dues. The unions necessarily relied on the state and its procedures to extract the dues and therefore "obtained significant aid from state officials." See Lugar, 457 U.S. at 937. Moreover, there is a clear agreement between the union defendants and the state that the unions will request the extraction of dues and the state will comply with that request. The actions at issue were not coerced, unilateral, or accidental. The union defendants worked with the state to execute the extraction of wages from plaintiffs.

Defendants' characterization of the state's action as mere "acquiescence" is incorrect. Defendants argue that the state did not influence "the content of the membership agreements." (Defs.' Mot. for Summ. J. at 13.) Defendants also cite Belgau v. Inslee, 359 F. Supp. 3d 1000, where the court found no joint action because the unions did not "'affirm[], authorize[], encourage[], or facilitate[]' the contents of the agreements." See id. at 1013-14. The action at issue, however, is not the drafting of the membership agreements. The alleged deprivation of rights involves both the union's request to

continue the garnishment of wages pursuant to the membership agreement and the subsequent extraction of those wages by the state. Again, neither the agreement drafted by the union, nor the request by the union, alone deprived anyone of any rights. The state had to act in concert with the union defendants and, at the very least, "facilitated" the enforcement of the agreements.

Because the state had to act for the deprivation to occur, defendants' argument that the deprivation resulted from decisions made by only the unions does not apply. In the union context, "actions taken pursuant to the organization's own internal governing rules and regulations are not state actions." Hallinan v. Fraternal Order of Police of Chicago, 570 F.3d 811, 817 (7th Cir. 2009) (finding that a union's decision to bar plaintiffs from membership was not state action). By contrast, where the union was "acting in concert . . . with the [state]" or "with powers delegated to it by the [state] or state law," the union's action is state action. Id. Here, the union defendants and the state have acted in concert. Further, the union defendants can command the state to deduct dues only because the state has granted them the power to do so. See Cal. Gov. Code § 1152. The deduction of dues by the state is not merely an internal decision by the union. It involves significant state involvement and transforms the unions' conduct into state action. Accordingly, the court concludes that the state-actor prong is satisfied.

C. Valid Contract

Plaintiffs argue that their membership agreements are not valid contracts and therefore do not require them to pay

13

dues. The court disagrees.

Under California law, "the essential elements for a contract are (1) '[p]arties capable of contracting'; (2) '[t]heir consent'; (3) '[a] lawful object'; and (4) '[s]ufficient cause or consideration." U.S. ex rel. Oliver v. Parsons Co., 195 F.3d 457, 462 (9th Cir. 1999) (quoting Cal. Civ. Code § 1550). Defendants contest the consent and consideration elements.

### 1. Consent

Plaintiffs argue that the membership agreement is not a contract because only one party signed it, and therefore only one party has consented. Notably, plaintiffs cite no cases finding that only a signature can show consent. Indeed, a signature is not a requirement under California law. See Cal. Civ. Code § 1550.

Further, mutual consent "may be manifested by written or spoken words, or by conduct." Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014). It is undisputed that after each of the plaintiffs joined the unions, the unions treated each plaintiff as a member and conformed to the provisions in the agreements. Indeed, the issue in this case is precisely that the unions did as the agreement provides. The union defendants' conduct therefore demonstrates consent.

### 2. Consideration

Plaintiffs contend that there is nothing the union could do that would breach the agreement and thus the agreement is void for lack of consideration. Defendant concedes, however, that in exchange for their promise to pay dues, plaintiffs received the right to vote in officer elections and in contract-

14

ratification referenda. (Resp. to Defs.' SUF at 7-8, ¶ 25; 10-11, ¶ 39.) Plaintiffs also received access to the AFSCME Advantage Program, which provides cell phone, auto, entertainment, and travel discounts. (Decl. of Bridget Hughes at 3, ¶ 7). Further, plaintiffs and their family members were entitled to take advantage of the AFSCME Free Collee Program. (Id.) Failure to provide any of these benefits would breach the agreement. Accordingly, the court finds that the agreements were supported by consideration and were therefore valid contracts.

   D.   Valid Waiver

Plaintiffs argue that even if the contract is valid, it does not adequately waive plaintiffs First Amendment rights. Plaintiffs allege that, because prior to Janus plaintiffs did not know they had the option not to join the union, their choice to join the union was coerced. In their view, because plaintiffs joined involuntarily, they were forced to support views they did not want to support. Defendants, on the other hand, contend that plaintiffs voluntarily signed their membership agreements and are therefore bound by the contracts.

The First Amendment right at issue in Janus was the right not to be "compel[ed] to mouth support for views [one] find[s] objectionable." See Janus, 138 S. Ct. at 2463. Any payment to a union, either in the form of dues or agency fees, "provide[s] financial support for a union that 'takes many positions during collective bargaining that have powerful political and civic consequences.'" See id. at 2464 (quoting Knox v. SEIU, Local 1000, 567 U.S. 298, 310-311 (2012)). A union's extraction of fees from an employee who has not agreed to

15

support such positions thus constitutes a "compelled subsidization of private speech." Id. The Janus Court therefore held that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages . . . unless the employee affirmatively consents to pay." 138 S. Ct. at 2486. When nonmembers agree to pay, they are "waiving their First Amendment rights." Id. The waiver "must be freely given and shown by 'clear and compelling' evidence." Id.

The Janus waiver requirement is inapplicable here. The plaintiff in Janus never agreed to become a union member and never agreed to pay union fees. Indeed, the concern in Janus was the "deduct[ions] from a nonmember's wages" without "affirmative[] consent[]." Id. at 2486. By contrast, "the relationship between unions and their voluntary members was not at issue in Janus." Cooley v. Cal. Statewide Law Enf't Ass'n, No. 2:18-CV-02961-JAM-AC, 2019 WL 331170, at *2 (E.D. Cal. Jan. 25, 2019). This is because in consenting to make a payment to the union, an employee is consenting to financially support the union and its "many positions during collective bargaining," see id. at 2464, and therefore his speech is not compelled. Because dues deductions do not violate a voluntary member's First Amendment right not to be compelled to speak, the Janus waiver requirement does not apply to voluntary members. See Belgau v. Inslee, 359 F. Supp. 3d 1000, 1016-17 (W.D. Wash. 2019) ("Janus does not apply here -- Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here.").

Here, plaintiffs voluntarily joined the union. "Where

16

the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced. The employee is a union member voluntarily." Kidwell v. Transp. Commc'ns Int'l Union, 946 F.2d 283, 293 (4th Cir. 1991); see also Anderson v. Serv. Emps. Int'l Union Local 503, 400 F. Supp. 3d 1113, 1116-18 (D. Or. 2019) ("To the extent that Plaintiffs may argue they were 'coerced' into membership, the Court does not agree."). Plaintiffs concede at oral that it was cheaper to remain a nonmember than to join the union. Cf. Cooley, 2019 WL 331170, at *2 ("[Plaintiff] knowingly agreed to become a dues-paying member of the Union, rather than an agency fee-paying nonmember, because the cost difference was minimal. That decision was a freely-made choice."); see also Seager v. United Teachers Los Angeles, No. 219CV00469JLSDFM, 2019 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019) (finding that plaintiffs signed similar agreement voluntarily). Indeed, as discussed above, plaintiffs were aware of the benefits that come with union membership and "voluntarily chose to pay membership dues in exchange for [those] benefits." Babb v. Cal. Teachers Ass'n, 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019).

Further, as counsel for plaintiffs agreed at oral argument, "[t]he fact that plaintiffs would not have opted to pay union membership fees if Janus had been the law at the time of their decision does not mean their decision was therefore coerced." Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1008 (D. Alaska 2019); Anderson, 400 F. Supp. 3d at 1117 ("That Plaintiffs' alternative to union dues -- i.e., agency fees -- was later found unconstitutional when it failed to include a First

17

1 | Amendment waiver does not change this analysis."); Smith v.
2 | Bieker, No. 18-CV-05472-VC, 2019 WL 2476679, at *2 (N.D. Cal.
3 | June 13, 2019) (finding a valid agreement, even if plaintiffs did
4 | not know they could choose not to pay dues at the time of
5 | signing, because "changes in intervening law – even
6 | constitutional law – do not invalidate a contract") (citing Brady
7 | v. United States, 397 U.S. 742, 757 (1970). Because this case is
8 | about voluntary members, the union defendants have not violated
9 | plaintiffs' First Amendment rights. Accordingly, defendants do
10 | not need to show a Janus waiver to enforce the agreement.
11 | What is left is an attempt by plaintiffs not to be
12 | bound by valid contracts. This court finds no constitutional
13 | objection to the performance of the membership agreements. Even
14 | if there were one, "the First Amendment does not confer . . . a
15 | constitutional right to disregard promises that would otherwise
16 | be enforced under state law." Cohen v. Cowles Media Co., 501
17 | U.S. 663, 672 (1991); see also Fisk v. Inslee, 759 F. App'x 632,
18 | 633 (9th Cir. 2019) (holding that the First Amendment does not
19 | preclude the enforcement of plaintiffs' voluntary union
20 | membership contracts); Belgau, 359 F. Supp. 3d at 1009. The
21 | court therefore holds that the union defendants were entitled to
22 | enforce the membership agreements.
23 | IT IS THEREFORE ORDERED that union defendants' Motion
24 | for Summary Judgment (Docket No. 89) be, and the same hereby is,
25 | GRANTED.
26 | IT IS ALSO ORDERED that state defendants' Motion for
27 | Summary Judgment (Docket No. 91) be, and the same hereby is,
28 | GRANTED.

As all claims have now been dismissed, the Clerk of Court shall enter final judgment in favor of all defendants.

Dated: December 19, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE